**EQUAL EMPLOYMENT OPPOR-TUNITY COMMISSION,**
Plaintiff–Appellee,

v.

**ACKERMAN, HOOD & McQUEEN, INC., Defendant–Appellant.**

No. 91–6116.

United States Court of Appeals, Tenth Circuit.

Feb. 10, 1992.

Donald R. Livingston, Acting Gen. Counsel, Gwendolyn Young Reams, Associate Gen. Counsel, Carolyn L. Wheeler, Asst. Gen. Counsel, and Susan L.P. Starr, Washington, D.C., for plaintiff-appellee.

Stephen P. Friot and Barbara L. Swimley of Spradling, Alpern, Friot & Gum, Oklahoma City, Okl., for defendant-appellant.

Before LOGAN and BARRETT, Circuit Judges, and KELLY,[**] District Judge.

BARRETT, Circuit Judge.

Defendant Ackerman, Hood & McQueen (AHM) appeals from a judgment entered in favor of Plaintiff Equal Employment Opportunity Commission (EEOC) on claims the EEOC brought on behalf of Phyllis Torbeck pursuant to the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k). Following a two-day bench trial, the district court determined AHM violated the PDA, and thus Title VII, when it fired Phyllis Torbeck due to her pregnancy. *EEOC v. Ackerman, Hood & McQueen, Inc.*, 758 F.Supp. 1440, 1453 (W.D.Okla.1991). We affirm.[1]

### Facts

AHM is an advertising agency located in Oklahoma City, Oklahoma. In December 1984, the company hired Phyllis Torbeck as an executive secretary. When she was hired, she was told the position would require some overtime. For the first ten months of her employment, she worked almost exclusively for Ray Ackerman. In the fall of 1985, Torbeck requested and received leave to undergo elective surgery to enable her to become pregnant. When she returned from leave on November 11, 1985, she was assigned to a newly devised secretarial pool.

On January 10, 1986, Torbeck learned she was pregnant. Shortly thereafter, she announced her pregnancy to her supervisor and coworkers. Prior to this time, she had not received any negative performance reviews. On January 14, however, she was "counseled" for the first time about her job performance. Specifically, she was criticized for her attitude with regard to work-

---

[**] Honorable Patrick F. Kelly, District Judge, United States District Court for the District of Kansas, sitting by designation.

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

ing overtime. In the period between January 10, 1986, and her termination, Torbeck worked anywhere from zero to eight and three quarters hours overtime per week.

Although Torbeck was in good health, she experienced many of the typical symptoms associated with pregnancy. These included fatigue, nausea, and headaches. Dr. James Cox, Torbeck's obstetrician, noted these symptoms when he examined her in February of 1986. At trial, Torbeck testified that she told some of her coworkers about the discomfort she was experiencing.

Following an office visit to Dr. Cox on March 12, Torbeck contacted one of his nurses by phone. She stated she was experiencing significant lower back pain, as well as headaches and fatigue. In response to that phone conversation, Dr. Cox wrote the following letter, dated March 31, 1986.

TO WHOM IT MAY CONCERN:
RE: PHYLLIS TORBECK
Mrs. Torbeck has been under my medical care since early in her current pregnancy. Her estimated due date is September 14, 1986.
She is in good health, but because of her pregnancy, it is my recommendation that she not be required to work more than a 40 hour work week.
Sincerely,
/s/
J. Gregory Cox, M.D.

At trial, Dr. Cox testified that although Torbeck showed no signs of having a high-risk pregnancy, he believed a slight reduction in work hours might alleviate her symptoms. At the time he wrote the letter, Dr. Cox was not aware of the specific amount of overtime Torbeck was working. He was aware of her work situation in general terms.

On April 2, Torbeck submitted the letter to AHM management. On the morning of April 3, she was called to a meeting with AHM officer Bruce Anderson. He asked her whether she intended to follow her physician's recommendation. She stated she would. Although Torbeck did not know it, Anderson already had prepared a termination letter. Later in the day, she was summarily discharged. AHM stated she was terminated for insubordination because she refused to work overtime.

At the time of Torbeck's discharge, AHM had no written policies governing either medical or personal leave. At various times in the company's history, however, employees had requested leave or work schedule adjustments. These requests were always granted. At no time was any employee required to show medical necessity in order to obtain leave or a schedule adjustment.

Specifically, the company allowed one employee to use a combination of sick time and personal leave to allow her to undergo plastic surgery. Torbeck was allowed to take leave when she underwent elective surgery in the fall of 1985. A third employee received a schedule modification allowing her to work less than forty hours a week when she was having personal and emotional problems.

Following a bench trial, the district court made extensive legal and factual determinations, concluding that AHM discriminated against Torbeck because of her pregnancy in violation of Title VII. The court ruled AHM treated Torbeck's schedule modification request differently because she was pregnant, and would not have fired her absent that pregnancy. *See* 758 F.Supp. at 1448. In this appeal, AHM asserts two general grounds for overturning the district court's decision. These include 1) that the court misinterpreted the PDA and, therefore, misapplied it, and 2) that the court's findings of fact are clearly erroneous.

*Discussion*

I. Standard of Review

■ Our review of the district court's factual findings is limited to determining whether they are clearly erroneous. *See* Fed.R.Civ.P. 52(a); *Beck v. QuikTrip Corp.*, 708 F.2d 532, 535 (10th Cir.1983). In contrast, we review all legal issues de novo. *Northern Natural Gas Co. v. Grounds*, 931 F.2d 678, 681 (10th Cir.1991);

*Cumpiano v. Banco Santander Puerto Rico,* 902 F.2d 148, 152 (1st Cir.1990).

## II. The Pregnancy Discrimination Act

The PDA emanates from Title VII, which, among other things, makes it unlawful to discriminate against any individual with respect to terms, conditions, or privileges of employment based on the employee's sex. *See* 42 U.S.C. § 2000e–2(a)(1). The PDA was added to the definitional section of Title VII in 1978. It states:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work....

42 U.S.C. § 2000e(k).

The section was added to Title VII "to prevent the differential treatment of women in all aspects of employment based on the condition of pregnancy." *Carney v. Martin Luther Home, Inc.,* 824 F.2d 643, 646 (8th Cir.1987). The immediate goal of the statute was to overturn *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), which held that a pregnancy-related exclusion in an employee disability plan did not violate Title VII. *See Newport News Shipbuilding & Dry Dock Co. v. EEOC,* 462 U.S. 669, 678–79, & nn. 12–17, 103 S.Ct. 2622, 2628–29, & nn. 12–17, 77 L.Ed.2d 89 (1983) (citing legislative history). "The Reports, debates, and hearings make abundantly clear that Congress intended the PDA to provide relief for working women and to end discrimination against pregnant workers." *California Fed. Sav. & Loan Ass'n v. Guerra,* 479 U.S. 272, 285–86, 107 S.Ct. 683, 691–92, 93 L.Ed.2d 613 (1987). It is with these goals in mind that we consider the issues presented in this appeal.

## III. *Application of the PDA*

AHM contends the district court misapplied the PDA in several respects. Specifically, the company contends 1) that the court erred in comparing AHM's treatment of Phyllis Torbeck with employees who were not similarly situated, 2) that the court erred in failing to compare Torbeck with a male employee, and 3) that the court inappropriately injected reasonableness into its disparate treatment analysis. We address these arguments in turn.

■ Claims made under the PDA are analyzed under the disparate treatment analysis applied in Title VII cases.[2] *See, e.g., Beck,* 708 F.2d at 534–36 (applying disparate treatment analysis); *Carney,* 824 F.2d at 647 (district court applying disparate treatment analysis in claim made under the PDA). Using this analysis, the district court concluded that the EEOC made out a prima facie case of discrimination. *See* 758 F.Supp. at 1452. It was then incumbent upon AHM to satisfy its burden of production to rebut the presumption of illegal termination. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254–56, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981). The company's proffered justification for the termination, insubordination, satisfied that burden. *See Nulf v. International Paper Co.,* 656 F.2d 553, 559 (10th Cir.1981) (insubordination constitutes a valid, nondiscriminatory reason for termination).

■ The pertinent issue in this appeal is whether AHM's alleged justification is merely a pretext for discrimination.[3] *See Burdine,* 450 U.S. at 253, 256, 101 S.Ct. at 1093, 1095. In this regard, the plaintiff

---

**2.** The analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is appropriate where, as in this case, there is no direct evidence of discrimination. *See Carney,* 824 F.2d at 648 (*McDonnell Douglas* test is inappropriate where there is direct evidence of discrimination).

**3.** AHM has conceded that the EEOC carried its burden of establishing a prima facie case. *See* Appellant's Br. at 21 n. 6. Thus, our consideration is limited to determining whether the EEOC carried the ultimate burden of showing intentional discrimination occurred.

carries the ultimate burden of persuasion to prove intentional discrimination occurred. *See Cumpiano*, 902 F.2d at 153. "A plaintiff may succeed in a Title VII action 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Luna v. City & County of Denver*, 948 F.2d 1144, 1148 (10th Cir.1991) (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095).

■ We turn now to the district court's application of the PDA in the context of the disparate treatment analysis outlined above. The Act requires courts to inquire whether the employer treats pregnancy or pregnancy-related conditions differently than other medical conditions. *See Newport News*, 462 U.S. at 684, 103 S.Ct. at 2631 ("The 1978 Act makes clear that it is discriminatory to treat pregnancy-related conditions less favorably than other medical conditions."). Thus, the district court applied the statute correctly when it compared Torbeck's treatment to other employees requesting accommodations under AHM's unwritten policy.

We reject AHM's suggestion that the district court committed legal error because it did not compare Torbeck's treatment under the leave policy with that of her male coworkers. The clear language of the PDA requires the court to compare treatment between pregnant persons and "other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k). The comparison is, therefore, between pregnant and nonpregnant workers, not between men and women. AHM's argument to the contrary lacks merit. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 248, 109 S.Ct. 1775, 1789, 104 L.Ed.2d 268 (1989) ("We have not … required women whose gender has proved relevant to an employment decision to establish the negative proposition that they would not have been subject to that decision had they been men." …).

■ Furthermore, each of the employees compared under the policy were similarly situated in that they requested leave or work schedule adjustments to accommodate their personal needs. In each case, the company granted the request without requiring further medical necessity. AHM contends these employees were not similarly situated because, unlike Torbeck, a doctor had not certified they were in "good health." Thus, they were not similar in their ability or inability to work. This argument is unconvincing. In essence, AHM is asserting that despite a history of never inquiring into the actual physical condition of employees requesting leave, it should have been able to do so in Torbeck's case merely because she was pregnant. The PDA was enacted specifically to prevent this type of dissimilar treatment.

## IV. *Review of the District Court's Factual Findings*

■ Finally, AHM takes issue with certain of the district court's factual findings. Although couched in a legal argument, AHM is really seeking a review of the district court's factual determinations. Specifically, the company argues the court erred in 1) finding that Torbeck's request was "reasonable," 2) in finding that AHM made no additional inquiry of Torbeck's medical situation prior to terminating her, and 3) in placing emphasis on the facts indicating that a termination letter was prepared prior to Torbeck's meeting with Bruce Anderson. These findings are not clearly erroneous. Further, they are indicative of the company's state of mind. "[AHM's] mindset is directly relevant to whether their proffered reason for [terminating Torbeck] is mere pretext." *Luna*, 948 F.2d at 1148. The district court did not err in relying on these findings, which are fully supported in the record.

■ In addition, the company urges that the facts taken as a whole do not support a finding of sex discrimination pursuant to the PDA. This argument necessarily invites a review of the record to determine whether the district court's findings are clearly erroneous. They are not.

The record shows that prior to announcing her pregnancy, Torbeck was not counseled about her job performance. Within days of her announcement, however, management criticized her work. Further, after she submitted her physician's letter, she was almost summarily discharged. The company made no further inquiry of her or her physician to determine what her needs were. There was absolutely no effort to accommodate Torbeck, despite a history of doing just that for employees with other medical concerns. There is ample evidence in the record to support the district court's findings that AHM discriminated against Torbeck because of her pregnancy.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.