996 F.2d 311
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Andy L. SCHOEPF, William B. Schoepf, Evely C. Schoepf,
George A. Schoepf, Plaintiffs-Appellants,
v.
Ralph RUDY, Dolores Rudy, Defendants-Appellees.
 No. 92-3207.
 United States Court of Appeals, Tenth Circuit.
 June 15, 1993.
 
 Before EBEL and KELLY, Circuit Judges, and BARRETT, Senior Circuit Judge.
 ORDER AND JUDGMENT*
 BARRETT, Senior Circuit Judge.
 
 
 1
 Andy L. Schoepf, et al., (Schoepfs) appeal from an order and judgment entered in favor of Ralph and Dolores Rudy (Rudy) after trial to a United States Magistrate Judge.
 
 
 2
 On March 12, 1985, KGP, a corporation formed by the Schoepf brothers, Andy, William, and George, entered into the Thirteenth and Rock Land Partnership with Rudy. The partnership was formed to acquire, develop, and sell one hundred and sixty acres of land known as the Fairfield properties in Wichita, Kansas. KGP, the managing partner, held an eighty percent interest; Rudy held the remaining twenty percent interest.
 
 
 3
 On March 14, 1985, a bank loaned the partnership seven million dollars secured by the Fairfield properties and the personal guarantees of the Schoepf brothers, Rudy, and their spouses. The loan was extended for an additional year on March 27, 1986. On June 1, 1986, KGP loaned the partnership $103,889.69 secured by a promissory note payable upon demand. On August 2, 1986, Schoepf Associates, a general partnership comprised of Andy, Beryl, William, and Evely Schoepf, loaned the partnership $113,669.00.
 
 
 4
 On October 27, 1986, KGP assigned $10,000 of the $103,889.69 note to the law firm of Foulston, Siefkin, Powers & Eberhart (the Foulston firm) and the remainder to the Sam Houston National Bank. An executed copy of the assignment was delivered to the Foulston firm but not to the bank. (Appellants Appendix at 199 and 214.)
 
 
 5
 On October 27, 1986, KGP assigned its interest in the partnership to Andy, William, and George's wife, Evely. The Schoepfs' interest in the partnership was thereafter assigned to Rudy via a letter agreement dated November 26, 1986. Under the agreement, in exchange for receiving the Schoepfs' interest, Rudy agreed to release and indemnify the Schoepfs on all partnership bank debts and other amounts owing by the partnership, give the Schoepfs a non-exclusive six percent sales listing on the Fairfield properties, and pay the Schoepfs a fifteen percent development consulting fee whenever he requested their services on the ongoing development of the project. A quit claim deed transferring the Fairfield properties to Rudy was filed on December 5, 1986.
 
 
 6
 In January, 1987, George Ablah purchased thirty-seven acres of the Fairfield property for in excess of $4,250,000. (Appellants' Appendix at 4). On February 23, 1987, George Schoepf wrote Rudy and demanded that Rudy comply with the provisions of the November 26, 1986, agreement, specifically the payment of a sales commission to the Schoepfs on the Ablah sale. George warned Rudy that unless Rudy adhered to the agreement that he would sue Rudy for misrepresentation and willful deceit. Rudy did not pay the Schoepfs a commission, and this suit followed.
 
 
 7
 Within their complaint, the Schoepfs alleged that they were entitled to: a fifteen percent consulting fee on various Fairfield property sales, including the Ablah sale; a six percent sales commission on various Fairfield properties sales, including the Ablah sale; repayment of loans totaling $219,000 made to the Fairfield properties project; actual and exemplary damages occasioned when Rudy breached fiduciary duties owed to them; and a full accounting of the Fairfield properties sales.
 
 
 8
 Within his answer, Rudy alleged that the Schoepfs' complaint failed to state a claim. Rudy also counterclaimed and alleged, inter alia, that the Schoepfs had improperly withdrawn over $600,000.00 from the partnership accounts and had breached their fiduciary duties to him.
 
 
 9
 Following trial to the court, the Magistrate Judge entered a detailed order finding that: the letter agreement of November 26, 1986, was a valid and enforceable contract; the Schoepfs were not entitled to any sales commissions or consulting fees under the contract; the Schoepfs' fraud claims against Rudy were barred by the statute of limitations, and, even if considered on the merits, the Schoepfs failed to meet their burden of proof; Rudy did not breach any fiduciary duties to the Schoepfs stemming from the November 26, 1986, agreement; KGP was not entitled to repayment of its loan to the partnership since the note had been assigned; the Schoepfs were entitled to repayment of the $113,669.00 loan to the partnership; and the Schoepfs were entitled to an accounting which Rudy could, alternatively, avoid by immediately repaying the $113,669.00 loan to the Schoepfs. Thereafter, Rudy repaid the $113,669.00 loan.
 
 
 10
 On appeal, the Schoepfs contend that the court erred in: finding that the November 26, 1986, agreement was void insofar as it provided that they would receive sales commissions; enforcing the agreement after voiding the sales commission portion; finding that they were not entitled to consulting fees; finding that their claims of fraud were barred by the statute of limitations; finding that Rudy had not breached his fiduciary duties; denying repayment of the KGP loan; and in finding that they were not entitled to an accounting.
 
 I.
 
 11
 The Schoepfs contend that the court erred in concluding that the six percent sales commission provided for in the November 26, 1986, agreement was void and unenforceable under the real estate licensing laws of Kansas. We review statutory interpretations de novo. Polys v. Trans-Colorado Airlines, Inc., 941 F.2d 1404 (10th Cir.1991).
 
 
 12
 Under the Kansas Real Estate Brokers' and Salespersons' Act, Kan.Stat.Ann. §§ 58-3034, et. seq., § 58-3036 provides that unless a party is exempt, no person shall engage in or conduct the business of a broker, associate broker or salesman within the State of Kansas "unless such person is licensed ... in accordance with this act." Section 58-3038 provides that "no action shall be instituted or recovery be had in any court of this state by any person for compensation for any act or service, the performance of which requires a license under this act, unless such person was duly licensed under this act at the time of offering to perform any such act...." Section 58-3037(a) provides that the licensing requirements of the act do not apply to a person who "performs any of the acts within the scope of this act with reference to such person's own property."
 
 
 13
 The Schoepfs acknowledge that they were not licensed under the real estate licensing laws of Kansas. They nevertheless argue that they were entitled to receive a six percent sales commission on the Fairfield properties sales because they were co-owners of the property and thereby fell within the § 58-3037(a) exemption. Rudy responds that the court properly found that since the property in question was owned by the partnership and since no license had ever been granted to the partnership or the Schoepfs, the Schoepfs were not entitled to receive any sales commissions.
 
 
 14
 In finding that the sales commission provision was void and unenforceable, the court concluded:
 
 
 15
 The letter agreement does provide for a 6% sales commission to the Schoepfs. Kan.Stat.Ann. 58-3036 requires that a broker or salesperson be licensed in this state. The Schoepfs are attempting to collect sales commissions for buyers with whom the Schoepfs had meaningful business dealings since August 15, 1986. However, Kan.Stat.Ann. 58-3038 preludes an action for compensation for any act or service, the performance of which requires a license under this act, unless such person was duly licensed under this act at the time they performed such act or service. The Schoepfs were never licensed as brokers or salespersons in this state. Thus, they cannot collect sales commissions pursuant to the contract. The Schoepfs argue that they are entitled to recover commissions under Kan.Stat.Ann. 58-3037(a), which indicates that the provisions of this act do not apply to any person who directly performs any of the acts within the scope of this act with reference to such person's own property. However, the property in question was owned by the Partnership, not by the Schoepfs. KGP, a corporation, was the managing partner until October 27, 1986. From that date until December 5, 1986, the Schoepfs were partners in the Partnership. K.S.A. 58-3042 requires that each officer of a corporation or a member of a partnership or each person employed by or associated with a corporation or partnership be a licensed broker or salesperson. No licenses are granted to a corporation or partnership. Since the Schoepfs were never the owners of the property at 13th and Rock Road, and since they did not have licenses, they are not entitled to a sales commission. This provision of the November 26, 1986 agreement is contrary to state law and is thus void and unenforceable.
 
 
 16
 (Appellants' Appendix at 52-53).
 
 
 17
 We affirm the court's conclusion that, inasmuch as the partnership owned the property and the Schoepfs were never licensed in Kansas, the Schoepfs were not entitled to sales commissions.
 
 II.
 
 18
 The Schoepfs contend that the court erred in enforcing the remainder of the terms of the November 26, 1986, agreement after finding that the sales commission provision was void and unenforceable under Kansas law.
 
 
 19
 We review state law determinations of the district court de novo, according no deference. Salve Regina College v. Russell, --- U.S. ---- (1991); Mid-America Pipeline v. Lario Enter., 942 F.2d 1519 (10th Cir.1991). However, "as a matter of independent federal procedure we utilize the normal federal standards of appellate review to examine the district court's decision process." Mid-America Pipeline at 1524.
 
 
 20
 The Schoepfs argue that if the sales commission provision of the November 26, 1986, agreement was unenforceable under Kansas law, it necessarily follows that the rest of the agreement was also unenforceable. The Schoepfs argue that "[t]he sales commission provision was clearly an essential part of the consideration due the Schoepfs for deeding over their interests in the partnership property to Rudy." (Brief of Appellants at 26). Rudy responds that the court correctly found that the sales commission provision was not an essential part of the agreement and the remainder of the agreement was therefore enforceable notwithstanding the unenforceability of the sales commission provision.
 
 
 21
 In addressing this issue, the court stated:
 
 
 22
 Having found part of the agreement unenforceable, the next question is whether the court can nonetheless enforce the rest of the agreement. Restatement (Second) of Contracts § 184(1) (1981) states as follows:
 
 
 23
 "If less than all of an agreement is unenforceable under the rule stated in section 178 [term of agreement unenforceable if contrary to state law], a court may nevertheless enforce the rest of the agreement in favor of a party who did not engage in serious misconduct if the performance as to which the agreement is unenforceable is not an essential part of the agreed exchange."
 
 
 24
 Based upon the evidence introduced at trial, the court finds that the sales commission provision of the letter agreement is not an essential part of the contract.
 
 
 25
 (Appellants' Appendix at 53).
 
 
 26
 We agree with the court's finding that "[b]ased on the evidence introduced at trial," the sales commission provision was not an essential part of the November 26, 1986, agreement. George Schoepf testified on December 19, 1986, less than one month after the agreement was executed, during a state court hearing in aid of execution on a judgment obtained against KGP, that: KGP had lost all its ownership rights in the partnership at a time when it was "very close to a foreclosure situation and if that had happened, then we would have lost everything anyway." (Appellees Appendix at 87); Rudy agreed to indemnify the Schoepfs and take over the property and full financial responsibility at a time when they were two months behind on interest payments, id. at 88-89; "it's highly questionable at this point whether Mr. Rudy will do anything more than just protect himself against a deficiency which would result from a foreclosure action. That's the most that he's hoping for right now," id. at 89; and the transfer to Rudy was "totally without any money, any property, any promise, or anything" and "no promises of anything that [they were] ever going to get." Id. at 90. On cross-examination, George testified that "[t]here was no consideration [for the transfer of the property to Rudy] except for indemnification against the loans," id. at 94-95, and that the property was transferred "[s]o that Mr. Rudy would come up with the money to pay the obligations related to the developer." Id. at 95.
 
 III.
 
 27
 The Schoepfs contend that the court erred in ruling that they were not entitled to consulting fees under the November 26, 1986, agreement. Our review of a district court's factual findings is limited to determining whether they are clearly erroneous. E.E.O.C. v. Ackerman, Hood & McQueen, Inc., 956 F.2d 944, 946 (10th Cir.1992), cert. denied, --- U.S. ---- (1992). In contrast, we review all legal issues de novo. Id. The clearly erroneous standard of review is appropriate where a mixed question of fact and law involves primarily factual inquiry, but de novo review is appropriate where a mixed question primarily involves consideration of legal principles. Supre v. Ricketts, 792 F.2d 958, 961 (10th Cir.1986). Inasmuch as the Schoepfs' contention is primarily a factual inquiry, our review is limited to determining whether the challenged findings are clearly erroneous.
 
 
 28
 The agreement provided that the Schoepfs would work with "Rudy and Rudy's designated project manager (on request)," (Appellants' Appendix at 171), and that they would be compensated at a rate of fifteen percent of the gross sales for development consulting services rendered. The Schoepfs argue that Rudy cannot escape liability under this provision by his failure to contact them when, as here, they were ready and willing to provide consulting services. Rudy responds that the court properly ruled that no consulting fees had been earned.
 
 In its order, the court found:
 
 29
 The agreement unambiguously states that the "Schoepfs will work with Rudy and Rudy's designated project manager (on request ) [emphasis added] regarding the ongoing development of the project." This "on request" provision provides Rudy the option to consult with the Schoepfs, it does not mandate or require him to consult with the Schoepfs. When an agreement provides for a consulting fee only if consulting work is done at the request of Ralph Rudy, the Schoepfs cannot be heard to complain when Mr. Rudy does not request any consulting work from them. Thus, plaintiffs are not entitled to 15% of the gross sales for consulting work."
 
 
 30
 (Appellants' Appendix at 54).
 
 
 31
 We hold that the court's finding that the Schoepfs were not entitled to receive any consulting fees was not clearly erroneous. It is uncontested that the Schoepfs were to consult Rudy upon request, that Rudy never requested any consulting services from the Schoepfs, and that neither KGP nor the Schoepfs did any consulting work for Rudy. (Appellees Appendix at 137 and 158).
 
 
 32
 Moreover, it is clear that the Schoepfs did not believe that Rudy was obligated or required to consult with them. As set forth supra, George Schoepf testified that the Fairfield properties were transferred to Rudy "totally without any money, any property, any promise, any anything," id. at 90, and that "[t]here was no consideration [for the transfer] except for indemnification for the loans." Id. at 94-95.
 
 IV.
 
 33
 The Schoepfs contend that the court erred in finding that their fraud claim was barred by the statute of limitations and, if not barred, that it would fail on its merits. Our review is de novo. Mid-America Pipeline at 1524.
 
 
 34
 The Schoepfs argue that the court incorrectly applied the controlling law to undisputed facts in finding that their action was barred by Kansas' two year statute of limitations. The Schoepfs also argue that the court mistakenly relied on its own erroneous findings, i.e., that they were not entitled to commissions or consulting fees, in finding that they had failed to establish their fraud claim.
 
 
 35
 In Rajala v. Allied Corp., 919 F.2d 610, 625 (10th Cir.1990), cert. denied, --- U.S. ---- (1991), we held:
 
 
 36
 The law of fraud is well established in Kansas:
 
 
 37
 * * *
 
 
 38
 * * *
 
 
 39
 "actionable fraud includes an untrue statement of fact, known to be untrue by the party making it, made with the intent to deceive or recklessly made with a disregard for the truth, where another party justifiably relies on the statement and acts to his injury."
 
 
 40
 * * *
 
 
 41
 * * *
 
 
 42
 An action for fraud must be brought within two years of when it accrues, "but the cause of action shall not be deemed to have accrued until the fraud is discovered."
 
 
 43
 In the instant case, the court, relying heavily on Rajala, found:
 
 
 44
 In this case George Schoepf was certainly aware by February 23, 1987, that Mr. Rudy was not adhering to the agreement of November 26, 1986. In fact, [Mr. Schoepf's] letter of February 23, 1987 expressly warned Mr. Rudy that unless he adhered to that portion of the agreement pertaining to commission, he would sue Mr. Rudy for misrepresentation and willful deceit. On these facts, the court finds that the plaintiffs knew of facts by February 23, 1987 which would reasonably indicate to them the Mr. Rudy was not honoring the agreement of November 26, 1986. Based on the facts that the plaintiffs knew on February 23, 1987, they were threatening to sue. This is not a case where the defendant lulled the plaintiff into confidence that nothing was amiss after February 23, 1987. Therefore, the plaintiffs had until February 23, 1989, to bring their cause of action for fraud. By filing it outside the two years in which the alleged fraud was discovered, the action is barred by the statute of limitations.
 
 
 45
 Even if the fraud claim were considered on its merits, it would fail.... A claim of fraud must be proven by clear and convincing evidence.... From the evidence presented, the court does not find that the plaintiffs have met their burden of proof that Ralph Rudy engaged in fraudulent conduct....
 
 
 46
 ... the plaintiffs must establish that they were damaged because of Mr. Rudy's failure to abide by the contract. However, the court has found that they were not entitled to sales commissions, and that Mr. Rudy had the option of not consulting with the Schoepfs. The court does not find that Mr. Rudy failed to adhere to the agreement of November 26, 1986. Therefore, plaintiffs have not been damaged.
 
 
 47
 (Appellants' Appendix at 56-57).
 
 
 48
 We hold that the court properly applied the law of Kansas as set forth in Rajala in finding that the Schoepfs' claim was barred by the statute of limitations and that the Schoepfs had failed to establish their fraud claim.
 
 V.
 
 49
 The Schoepfs contend that the court erred in finding that Rudy did not breach the fiduciary duties he owed to them under the November 26, 1986, agreement. The Schoepfs contend that they submitted uncontroverted evidence of Rudy's breach, including his failure to pay them sales commissions and consulting fees. Where a mixed question of fact and law involves primarily a factual inquiry, the court's underlying factual findings are reversible only if clearly erroneous. Supre, 792 F.2d at 9611.
 
 
 50
 A fiduciary relationship may exist in Kansas under a variety of circumstances. It exists where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence. In Denison State Bank v. Madeira, 640 P.2d 1235, 1242-43 (Kan.1982). Acknowledging Denison State Bank v. Madeira, the court in our case found:
 
 
 51
 Plaintiffs claim that Rudy breached his fiduciary due to the Schoepfs by his failure to pay the commissions due, by his failure to repay money due on notes to the Schoepfs, by converting to his own personal benefit funds from lot sales, by increasing the debt against the project for a separate and unrelated venture, and by his failure to provide an accounting.... The court has already held that no commissions are due, and that the Schoepfs are not entitled to money on the note [which relates to the consulting fee]. The court further finds that there is no evidence that Ralph Rudy converted money from the project for his own personal benefit. The money from the sale to George Ablah went into the business account for the property, and expenses of the business, including the attorney's fees for this case, were paid out of this account. Use of the money from sales to pay for expenses covering the property at 13th and Rock Road, including attorney's fees, does not constitute a breach of fiduciary duty. The court further finds that borrowing $100,000.00 from KSB & T [a bank] for an unrelated project, is not of itself, a breach of a fiduciary duty. It is reflected on the books as a loan which Rudy owes to the business account of the 13th and Rock Road property.
 
 
 52
 (Appellants' Appendix at 58-59).
 
 
 53
 We hold that these findings are not clearly erroneous, particularly when, as here, George Schoepf testified that Rudy had taken over the property and full financial responsibility at a time when the partnership was very close to foreclosure, the transfer of the property to Rudy was "totally without any money, any property, any promise or anything," and "there was no consideration [for the transfer] except for indemnification against the loans."
 
 VI.
 
 54
 The Schoepfs contend that the court erred in denying repayment of a $103,889.69 loan from KGP to the partnership on the basis that the loan had been assigned. We review state law determinations de novo. Mid-America Pipeline at 1524.
 
 
 55
 On June 1, 1986, the partnership borrowed $103,889.69 from KGP secured by a promissory note payable upon demand. The note and a separate assignment dated October 27, 1986, indicate that $10,000.00 of the note was subsequently assigned by KGP to the Foulston firm and the remainder to Sam Houston National Bank. Both the note and assignment were executed by George Schoepf as an officer of KGP. While the Foulston firm received a copy of the assignment, the bank did not. (Appellants' Appendix at 199).
 
 
 56
 During a November 3, 1986, deposition taken in conjunction with a hearing in aid of execution on a judgment against KGP, George Schoepf testified that: the note had been assigned; KGP had never made a demand on the note; and the note no longer belonged to KGP. (Appellants' Appendix at 207-08). Andy Schoepf testified during trial that neither the assignment nor the note was ever delivered to the Sam Houston National Bank because "the bank never required additional collateral, so we didn't volunteer it." (Appellants' Appendix at 214).
 
 
 57
 During the trial, the following colloquy occurred between counsel for the Schoepfs and Phil Frick, an attorney with the Foulston firm:
 
 
 58
 Q. All right. As far your firm's interest in this particular promissory note, do you have an agreement with the Schoepfs as to the payment of whatever proceeds they might collect from here, from this litigation, to be paid to your firm?
 
 
 59
 A. I do not know if we have anything based upon proceeds from this litigation. This note still stands as assigned.
 
 
 60
 Q. Have you had any conversations with counsel on behalf of the Schoepfs concerning collecting the money and paying it to you if it's collected?
 
 
 61
 A. Yes.
 
 
 62
 * * *
 
 
 63
 * * *
 
 
 64
 Q. Go ahead, Mr. Frick, explain what the conversations were that we had.
 
 
 65
 A. You advised me that, to the extent that the obligor on the note was able or proper, they would be forwarded to us in accordance with their agreement.
 
 
 66
 Q. Was that all right to try and remit to you if we could collect it?
 
 
 67
 A. Yes, sir.
 
 
 68
 (Appellants' Appendix at 188-89) (Emphasis added).
 
 Within its order, the court found:
 
 69
 The plaintiffs are seeking repayment of the loan of $103,889.69 from KGP to the Partnership. However, the court has found that the loan was assigned to Foulston, Siefkin, Powers & Eberhardt and the Sam Houston National Bank.... Kansas cases clearly state the rule to be that an assignment passes all of the assignor's title or interest to the assignee, and divests the assignor of control over the subject matter of the assignment. Army National Bank v. Equity Developers, Inc., 245 Kan. 3, 22 774 P.2d 919 (1989); Patrons State Bank & Trust Co. v. Shapiro, 215 Kan. 856, 861, 528 P.2d 1198 (1974). Both the promissory note and a separate document indicate that an assignment had taken place. Furthermore, George Schoepf has testified in another proceeding that the note had been assigned. Therefore, the court finds that the note in question had been assigned, and that KGP and/or the plaintiffs have no further interest in the note and cannot recover on it.
 
 
 70
 (Appellants' Appendix at 60-61).
 
 
 71
 The Schoepfs contend that the court's finding, that "KGP and/or the plaintiffs have no further interest in the note and cannot recover on it" because it had been assigned, was clearly erroneous. The Schoepfs contend that the court ignored two dispositive facts, i.e., the Foulston firm had authorized them to try and collect on the note to the extent of their assignment and to remit any proceeds collected to the firm, and the note was never assigned to the bank because neither the note nor the assignment were delivered to the bank. The Schoepfs make these arguments without citing any supportive Kansas authority.
 
 
 72
 Rudy responds that the court correctly relied on Army National Bank v. Equity Developers, Inc., 774 P.2d 919 (Kan.1989) (Army National Bank ) and Patrons State Bank & Trust Co. v. Shapiro, 528 P.2d 1198 (Kan.1974) (Patrons State Bank ) in finding that the note had been assigned and that the Schoepfs had no further interest therein and could not recover on it.
 
 
 73
 The evidence established that KGP intended to assign the note. Both the original note and the separate assignment reflect that the note had been assigned to the Foulston firm and the bank. The undated assignment on the bottom of the note and the separate assignment dated October 27, 1986, were both executed by George Schoepf as an officer of KGP. Shortly thereafter during state court proceedings, George testified unequivocally as an officer of KGP that the note had been assigned and that the note no longer belonged to KGP. Phil Frick, one of KGP's attorneys, testified that his firm had taken a partial assignment of the note and that the note "still stands as assigned." Given the conflicting evidence before the court, we cannot say that the trial court's findings of fact were clearly erroneous or that the conclusion of law that resulted from those findings was incorrect.
 
 
 74
 After the assignment, all of KGP's title or interest in the note passed to the Foulston firm and the bank. Army National Bank, 774 P.2d at 932. KGP was divested of control over the note and could not recover on it. Id. Frick's subsequent acknowledgment, some three and one-half years later, that it would be "all right" for the Schoepfs to try and collect on the note and to remit the proceeds to the Foulston firm, did not transfer any title or interest in the note back to the Schoepfs or otherwise authorize the Schoepfs to sue thereon. In Kansas, "[t]he payee or endorsee in possession of a negotiable instrument holds the legal title thereto, and it is the legal title to the paper, not the beneficial interest therein, that controls as to the proper parties plaintiff in a suit for the collection thereof." Glenn v. Lukenbill, 389 P.2d 792, 794 (Kan.1964).
 
 VII.
 
 75
 The Schoepfs contend that the court erred in ruling that they were not entitled to an accounting from Rudy. The Schoepfs argue that they cannot enforce the November 26, 1986, agreement without an accounting and that an accounting is necessary to insure that they are paid the sales commissions and consulting provisions due them under the agreement and to insure that Rudy complied with the agreement. Rudy responds that "[t]he ruling of the court and the actions taken by Rudy [repayment of the Schoepfs Associate note] have allowed the appellants to recover all that they would be entitled to recover regardless of whether an accounting was completed." (Appellees Brief at 33). We agree.
 
 Within its order, the court found:
 
 76
 The next issue ... is the need for an accounting. One of the factors to consider is the complex nature of the accounts. In upholding the validity of the November 26, 1986 agreement, the court has found that the plaintiffs are entitled to repayment of their loan (from Schoepf Associates) once all existing bank debt is repaid. In addition, loans from the defendants will need to be taken into account. The court thus believes that plaintiffs are entitled to an accounting or access to the financial records of the project.
 
 
 77
 * * *
 
 
 78
 * * *
 
 
 79
 The Schoepfs are entitled to repayment of the Schoepfs Associates note of $113,669.00. Ralph Rudy is entitled to repayment of loans totalling $179,488.05. The parties are entitled to payment of these loans on a proportional basis, after the KSB & T [bank] loan has been, or should have been, paid in full.
 
 
 80
 In the alternative, Ralph Rudy could at this time pay off the Schoepf Associate note, plus interest. If said payment is made, then an accounting or access to the financial records of the project will not be required.
 
 
 81
 (Appellants' Appendix at 64-65).
 
 
 82
 Inasmuch as the Schoepfs were paid in full in accordance with the court's order, we hold that the court did not err in denying an accounting.
 
 
 83
 AFFIRMED.
 
 
 
 *
 This Order and Judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3