**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 6 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

LAWRENCE L. GRAFF,

Plaintiff-Appellant,

v.

WILLIAM J. HENDERSON,
Postmaster General; UNITED
STATES POSTAL SERVICE, Agency,

Defendants-Appellees.

No. 00-4205
(D.C. No. 99-CV-32B)
(D. Utah)

**ORDER AND JUDGMENT** *

Before **EBEL** , **KELLY** , and **BRISCOE** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Lawrence L. Graff appeals from a judgment entered by the district court following a bench trial. We affirm.

The parties stipulated to all the facts except for one, that being whether defendant United States Postal Service failed in its duty to reasonably accommodate Mr. Graff's religious beliefs when it refused to hire him. The stipulated facts are as follows: In 1985, Mr. Graff applied for a position as a clerk-carrier at which time he was required to identify three facilities where he desired to work. After applying, Mr. Graff joined the World Wide Church of God and began observing the Sabbath from sundown Friday to sundown Saturday in accordance with church doctrine. In 1991, Mr. Graff was notified he was eligible for consideration as a part-time flexible distribution clerk. The hours were from 6:30 a.m. to 5:15 p.m. Monday through Saturday. At his interview, Mr. Graff did not mention his religious work restrictions, nor did the interviewer inquire into any such restrictions. Approximately one month later, Mr. Graff notified defendant of the restrictions. Two months later, defendant informed Mr. Graff it could not accommodate his religious work restrictions without undue hardship and, consequently, he was no longer being considered for employment. Mr. Graff then filed a complaint with the EEO Counselor. Almost a year later, he requested a lateral job transfer to include any assignment within a set geographic area . Defendant stated it could not make that accommodation because the collective

bargaining agreement (CBA) provided that employees with less than eighteen months at a particular location were not eligible for lateral transfers.

An ALJ for the Equal Employment Opportunity Commission (EEOC) determined that defendant had shown it could not accommodate Mr. Graff's work restrictions at the three original locations without undue hardship. The ALJ determined, however, that defendant had not made a reasonable attempt at accommodation with respect to the lateral job transfer option. Defendant rejected that decision. Mr. Graff appealed and the EEOC's appellate branch upheld defendant's decision to reject the ALJ's decision.

Mr. Graff then brought this Title VII action in which he alleged that defendant had not performed its duty to accommodate his religious beliefs. The district court entered judgment for defendant, holding that a lateral transfer would not have been a reasonable accommodation, as to do so would require defendant to violate the CBA. The court held that defendant was not required to change the terms of the CBA to accommodate a non-employee.

On appeal, Mr. Graff argues he established a prima facie case that defendant failed to accommodate his religious beliefs and that the district court did not apply the two-step process set forth in Thomas v. Nat'l Ass'n of Letter Carriers, 225 F.3d 1149, 1155 n.6 (10th Cir. 2000). He further contends he

-3-

proved at trial that defendant had made no effort to accommodate his religious beliefs regarding the lateral transfer option.

First, we note that whether Mr. Graff made a prima facie case is irrelevant once a case proceeds to trial. See Coleman v. B-G Maint. Mgmt. of Colo., Inc., 108 F.3d 1199, 1205 (10th Cir. 1997) (when Title VII case is fully tried, issue of whether plaintiff established prima facie case drops out, and court considers only whether plaintiff proved his claim at trial). Thus, the issue of whether the court applied the two-step process set forth in Thomas is also irrelevant.

Our review of the district court's factual findings in a Title VII case following a bench trial "is limited to determining whether they are clearly erroneous[;]" however, we review the district court's statutory interpretation and legal analysis de novo. EEOC v. Ackerman, Hood & McQueen, Inc., 956 F.2d 944, 946 (10th Cir. 1992).

Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire . . . any individual . . . because of such individual's . . . religion." 42 U.S.C. § 2000e-2. The term "religion" "includes all aspects of religious observance and practice, as well as belief . . . ." Id. § 2000e(j).

"[A]n employer who has made no efforts to accommodate the religious beliefs of an employee or applicant before taking action against him may only prevail if it shows that no accommodation could have been made without undue

-4-

hardship." Toledo v. Nobel-Sysco, Inc. 892 F.2d 1481, 1490 (10th Cir. 1989); see also Trans World Airlines, Inc. v. Hardison , 432 U.S. 63, 75 (1977) . This duty "does not obligate the employer to consider and preclude an infinite number of possible accommodations." Thomas, 225 F.3d at 1156. Further, the employer need not "bear more than a *de minimis* cost," Hardison , 432 U.S. at 84, "deny the shift and job preference of some employees . . . to accommodate . . . the religious needs of others," id. at 81, or violate a valid labor agreement, id. at 79.

Here, defendant denied Mr. Graff's requested accommodation of a lateral transfer because such a transfer would require that it violate the CBA.[1] As the duty to accommodate does not require the employer to take steps inconsistent with a valid CBA, defendant was not required to provide Mr. Graff with a lateral transfer.

---

[1] Mr. Graff argues the CBA does not apply to applicants and, thus, defendant could have explored a lateral transfer without violating the agreement. Mr. Graff faults the district court for assuming the CBA applied to him. Whether the CBA applied to job applicants is an issue of fact that can only be resolved by reference to the CBA and any other pertinent materials. Mr. Graff did not ask the district court to make this determination, nor did he seek to have the court determine this fact post-judgment. In fact, in his reply brief, Mr. Graff appeared to assume the CBA applied to him. See Aplt.'s App. at 33. We cannot address issues not raised first to the district court, see Walker v. Mather (In re Walker), 959 F.2d 894, 896 (10th Cir. 1992); nor can we resolve issues of fact not presented to the district court, cf. Ass'ns Working for Aurora's Residential Env't v. Colo. Dep't of Transp. , 153 F.3d 1122, 1126 n.2 (10th Cir. 1998) (appellate court defers to district court's findings of fact where record on appeal is insufficient to determine if those findings are clearly erroneous).

The judgment of the United States District Court for the District of Utah is AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge