Rhonda LEEKER, Plaintiff,

v.

GILL STUDIOS, INC., Defendant.

No. CIV. A. 97–2541–KHV.

United States District Court,
D. Kansas.

Sept. 10, 1998.

Mark G. Flaherty, Rowdy B. Meeks, Sonnenschein, Nath & Rosenthal, Kansas City, MO, for defendant.

Steven S. Griswold, Griswold Law Firm, P.C., Kansas City, MO, for plaintiff.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

On October 24, 1997, plaintiff Rhonda Leeker filed suit against her former employer, defendant Gill Studios, Inc. ("Gill Studios") seeking damages for employment discrimination in violation of Title VII, and specifically, the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) Plaintiff also asserted a state law claim under the Kansas Act Against Discrimination ("KAAD"), K.S.A. § 44–1001 *et seq.* This matter comes before the Court on *Defendant Gill Studios, Inc.'s Motion For Summary Judgment* (Doc. # 17) filed July 1, 1998. For reasons stated more fully below, the Court finds that defendant's motion should be sustained.

### Summary Judgment Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* 477 U.S. at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Kaul v. Stephan,* 83 F.3d 1208, 1212 (10th Cir.1996). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l. Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 793 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to

require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson* 477 U.S. at 251–52, 106 S.Ct. 2505.

### Factual Background

The following material facts are undisputed, or where disputed, viewed in the light most favorable to plaintiff.

Gill Studios hired plaintiff as a general printing production worker in March 1996. Her duties were varied, and included picking up completed print orders and taking them to the dye cutting area, mixing inks, taking printed items off the press, and making computer mouse pads. In December 1996, plaintiff's supervisor assigned her the additional duty of refilling containers of 814R Solvent, a cleaning agent used on the printing presses; plaintiff spent about twenty minutes daily on this task.

At the end of December 1996 plaintiff learned that she was pregnant. On Friday, January 3, 1997, plaintiff informed her lead employee, Joel Henderson, about her pregnancy. Plaintiff told Henderson that she did not think it was a good idea for her to fill the 814R Solvent cans until she talked to her doctor. Henderson told plaintiff to talk with her temporary supervisor, John Rolands, and Rolands told plaintiff to tell Henderson to have someone else fill the 814R cans.

The following Monday plaintiff gave her permanent direct supervisor, Larry Freeman, a note from Dr. James Morse, her family physician. The note stated "pt. is 4–5 wks pregnant & should not be around high concentrations of chemicals until further notice from her OB doctor." Defendant's App. C. Plaintiff missed work for the next three days due to "1st trimester bleeding." *See* Defendant's App. D. On Friday, January 10, 1997, plaintiff gave Gill Studios a note from her obstetrician, Dr. Bruce B. Snider, which stated that "Rhonda is to avoid inhalation of chemicals." *Id.*

Plaintiff alleges that Gill Studios terminated her employment on January 10, 1997. She also testified as follows:

Q: Did somebody tell you your employment ended as of [the 10th of January?]
A: I was told that I could no longer work there with restrictions.
Q: Who told you that?

A: Larry Freeman . . . [h]e was my supervisor.

Q: Did he tell you that your employment was terminated as of that date?

A: No. He told me that in six months that if I did not return to full duties that I would be terminated at that time.

Q: What else did he tell you on the 10th of January of '97? Can you remember anything else?

A: I guess I asked him—I said "You know I can't come back in six months because I'll only be seven months pregnant and I can't return to my full duties," and he said, "I'm sorry but I have to put you on disability then," and that's about it, I guess.

Plaintiff's deposition at 14–15.

Plaintiff further testified that she argued with Freeman, and that he called a couple of people. He then told plaintiff that "[i]f [she] would have the doctor lift [her] restrictions that [Freeman] would not make [her] fill the 814 cans," and she replied that she could not do that because it could hurt her baby. *Id.* at 16. Plaintiff then called her husband and told him that "they let me go because I'm pregnant." *Id.* at 16–17. On further questioning plaintiff stated that Freeman did not tell her he was letting her go because she was pregnant; rather, he told her that she could not work there with restrictions. He did not state that she was fired. Plaintiff asked for paperwork or a policy book and he said he did not have anything. Plaintiff called her union representative that day but he never called her back and she did not file a grievance through the union.

That same day, after plaintiff returned home, she called Freeman and asked if they could find another place to work without the chemical, or if she could wear a mask, or if someone else could do "that particular job" (apparently referring to filling the 814 cans.). She stated that Freeman said "No, not with restrictions." She stated that Dr. Snider's nurse called Freeman and told him that plaintiff could do anything at Gill Studios as long as she did not "inhale that chemical," *id.* at 22, and begged them to give plaintiff back her job. Plaintiff stated that she talked with

the nurse after the nurse called Freeman, and confirmed the conversation.

Plaintiff called Roger Morris, director of human resources, the following Monday, and asked about doing something else, or about wearing a mask. Morris told plaintiff that she could not work at Gill Studios with the restrictions. On Friday January 17th, plaintiff went to Gill Studios to pick up a disability form that Freeman had asked her to complete. Plaintiff and her physician filled out the disability form, *see* Defendant's App. F, and she received disability payments of $122.54 per week from late January through the middle of July. She also continued to receive health insurance benefits from Gill Studios. Plaintiff depo. 69–70. In July, Gill Studios extended plaintiff's disability leave, *id* at 72, and on July 23, 1997, in response to a request by Gill Studios, plaintiff provided a doctor's note stating that she was to avoid "inhalation of chemicals." Defendant's App. G.; plaintiff's depo. at 68

After she delivered her baby, plaintiff received a letter from Gill Studios, asking her to come back to work. She did not respond to the letter. On October 16, 1997, Morris sent plaintiff a letter which confirmed a telephone conversation concerning her disability leave. The letter stated that plaintiff's leave had expired on October 13, 1997, and that she had not reported to work or provided medical substantiation for failure to report. Defendant's App. H. The letter further stated that according to the agreement between Gill Studios and the Sign and Pictorial Painters Union, her seniority and employment was terminated due to "failure to return, as scheduled, from any leave of absence or vacation, unless such failure results from documented illness or injury, or other serious and unavoidable extenuating circumstance, and the employee provides the Employer the earliest possible notice thereof." *Id.* Plaintiff did not respond to the letter and never returned to work at Gill Studios.

Plaintiff testified that despite the restrictions on inhaling chemicals she could have worked in her position, if she was not required to fill the 814 R Solvent cans, or in another position in the plant. She did not, however, provide evidence of vacancies in

such positions at the time. Plaintiff did not produce any evidence concerning whether work in those areas would have violated her medical restriction against inhaling chemicals.

In her deposition, plaintiff stated that she told Todd, one of the press operators, that she was pregnant.[1] Todd replied that "there could be problem with [her] working there because there had been in the past with other women that had become pregnant." Defendant's App. A. at 36. Todd told plaintiff that Gill Studios probably would not let her work. *Id.*

### Analysis

Plaintiff contends that Gill Studios discriminated against her by placing her on disability and terminating her employment due to her pregnancy. She asserts that the medical restrictions related to her pregnancy only prohibited her from filling 814 R Solvent containers, and that filling the solvent containers was not an essential part of the position of production worker. Thus she asserts that she remained qualified to continue her job as a production worker and that Gill Studios discriminated against her by refusing to allow her to continue in that position. Alternatively, plaintiff asserts that even if she could not perform the essential work of a general production worker, she was qualified to perform many other positions at Gill Studios even with her medical restrictions. She alleges that Gill Studios discriminated against her by refusing to place her in an alternative position for which she was qualified.

Gill Studios asserts that it is entitled to summary judgment because plaintiff has produced no direct evidence of discrimination and has not met her burden of establishing a prima facie case based on indirect evidence. Gill Studios also contends that even if plaintiff established a prima facie case, it has produced undisputed facts which show a legitimate nondiscriminatory reason for its actions.

---

**1.** Todd's last name is not shown on this record.

## A. Title VII Pregnancy Discrimination Act Claim

Title VII makes it unlawful to discriminate against any individual with respect to terms, conditions, or privileges of employment based on the employee's sex. *See* 42 U.S.C. § 2000e–2(a)(1). The Pregnancy Discrimination Act ("PDA") amended Title VII in 1978 in order to bring the condition of pregnancy within the definition of sex discrimination. *See E.E.O.C. v. Ackerman, 956 F.2d 944. Hood & McQueen, Inc.,* 956 F.2d 944, 947 (10th Cir.1992) (PDA was "added to Title VII 'to prevent the differential treatment of women in all aspects of employment based on the condition of pregnancy.'") (quoting *Carney v. Martin Luther Home, Inc.,* 824 F.2d 643, 646 (8th Cir.1987)).

▇ The Court analyzes PDA claims under the disparate treatment analysis applied in other Title VII cases. *See Ackerman Hood & McQueen, Inc.,* 956 F.2d at 947. A plaintiff may prove disparate treatment by using either direct or indirect proof of discrimination. If a plaintiff relies upon indirect proof of disparate treatment, then the Court applies the burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under the burden-shifting analysis, the plaintiff first bears the burden of establishing a prima facie case of discrimination. If she sets forth facts to establish a prima facie case, the burden then shifts to defendant to rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment decision. *See Burdine,* 450 U.S. at 254–56, 101 S.Ct. 1089; *Ackerman,* 956 F.2d at 947. "At the summary judgment stage, it then becomes the plaintiff's burden to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the

challenged action is pretextual-i.e. unworthy of belief." *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995). If plaintiff makes out a prima facie case of discrimination and creates an issue of fact whether defendant's reasons are pretextual, plaintiff's claim withstands summary judgment. *Id.*

The Court first addresses the question whether plaintiff produced direct evidence of discrimination. Plaintiff points to her testimony that Todd forecast "problems with me working there" because "there had been in the past with other women that had become pregnant," and predicted that "they probably wouldn't let me work." *Plaintiff's Memorandum In Opposition To Defendant's Motion For Summary Judgment* (Doc. # 20) filed July 22, 1998 (citing Plaintiff depo. p. 36:7–22). Defendant points out that comments by a non-decisionmaker are not evidence of discrimination. *See Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 531 (10th Cir.1994); *see also Rea v. Martin Marietta Corp.,* 29 F.3d 1450, 1457 (10th Cir. 1994). But the cases on which defendant relies deal with discriminatory comments by non-decisionmakers; Todd's comments, by contrast, relate to a worker's observation regarding how management has treated pregnant women in the past. Although his comments suggest that Todd might have been able to provide a factual foundation for a lay opinion that Gill Studios had a discriminatory practice toward pregnant women, such testimony is not in the record on summary judgment. Plaintiff has failed to point to any direct evidence of discrimination.[2]

▇ Without direct evidence of discrimination, in order to make out a prima facie case of sex discrimination based on pregnancy, plaintiff must show that (1) she belonged to the protected class, e.g., she was pregnant during the relevant time period; (2) she remained qualified for her position or applied

---

**2.** In response to defendant's assertion that she presented no direct evidence of discrimination, plaintiff pointed only to Todd's comments. The Court notes that in *Carney v. Martin Luther Home, Inc.,* 824 F.2d 643, 647 (8th Cir.1987), plaintiff asserted that defendant violated the PDA when it placed her on leave during her pregnancy even though it was undisputed that she remained able to perform her job despite medical

restrictions on lifting and pushing. The Eighth Circuit held that the plaintiff "presented direct evidence of discrimination by establishing that the defendant placed her on unpaid medical leave as a result of a [pregnancy] 'related medical condition.'" *Id.* 824 F.2d at 648. *Carney* is distinguishable from this case because in *Carney,* defendant conceded that plaintiff remained able to perform her job.

for another position for which she was qualified; (3) she received unfavorable treatment; and (4) she was treated less favorably than others who were not pregnant but were similar in their ability or inability to work. *See Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1380 (10th Cir.1994).

■ In this case, plaintiff has produced evidence that she was pregnant during the relevant time and thus meets the first element. On the second element, she asserts that she could still perform her production job as long as she was not required to fill the solvent cans. But she bases this assertion on her own statement and the hearsay statement of her obstetrician's nurse. In the face of two notes from physicians that she avoid exposure to chemicals, and based on her failure to produce evidence that she would not be exposed to chemical fumes in the production area, the Court finds that she has failed to show the second element as to her production job. Plaintiff also claims that she asked to work in a variety of other positions. But she has not produced evidence of vacancies in any such positions. Plaintiff also has failed to produce evidence that such positions would not involve exposure to chemical fumes. She did not show that she would be qualified if any positions existed.

■ As to the third element, unfavorable treatment, plaintiff asserts both that Gill Studios fired her and that it failed to hire her for alternative positions. She cannot show adverse action as to alternative positions because she has failed to produce any evidence that alternative positions were vacant. On her claim that Gill Studios fired her, plaintiff testified that she understood that Gill Studios would terminate her employment if she did not come back after six months. Because she was not due to deliver her baby until after that six-month period, plaintiff asserts

she was terminated in January, 1997. But the record does not contain such evidence, other than plaintiff's belief that she was terminated, and in fact it reflects that she was *not* terminated after the six-month period. Plaintiff, however, did show that defendant placed her on involuntary medical leave, which can be seen as an adverse action.[3] She also presented uncontroverted evidence that Gill Studios terminated her employment in October, 1997. Thus she has established the third element of the prima facie case.

■ The fourth element requires plaintiff to show that the unfavorable treatment occurred in circumstances which give rise to an inference of discrimination, such as evidence that the employer treated plaintiff differently than similarly situated non-pregnant employees. *See Ackerman*, 956 F.2d at 948. Plaintiff has asserted that Gill Studios treated other production workers differently because it did not ask them to fill the solvent containers. But the Court's reading of the record does not find adequate factual support for plaintiff's argument that this was a requirement of her job,[4] and in any event Gill Studios told her that it would allow her not to fill the solvent cans. Plaintiff also asserts that defendant hired non-pregnant employees with restrictions or allowed such employees to continue working despite their restrictions. But the record contains absolutely no evidence that defendant somehow accommodated employees with restrictions on exposure to chemicals, so that they could work in the printing plant. *See* Plaintiff's Memo, depo. of Larry Freeman at 47–49, 55, 62, 65–67. Finally, the undisputed evidence shows that Gill Studios terminated plaintiff's employment only after she failed to come back to work, or to provide a medical excuse for not doing so, within a reasonable time after

3. The Court notes that under the PDA, an employer is required to treat an employee who is temporarily unable to perform her job because of a pregnancy-related condition in the same manner as the employer treats other employees who are temporarily disabled but who are not pregnant.

4. Although plaintiff attempts to construe the record to show that Gill Studios refused to let her work because she could not fill the solvent cans, we find nothing in the record that actually sup-

ports this position. Rather, it appears that Gill Studios was willing to reassign that task to another employee, and that it did so immediately upon plaintiff's request. From all of the materials before us, it certainly appears that Gill Studios determined that plaintiff could not do the job, even without the solvent task, because of the chemicals which were present in the production area at large. At most this aspect of the case indicates that the parties failed to fully communicate.

the birth of her child. Plaintiff has failed to produce evidence of both the second and fourth elements of a prima facie case.

■ Alternatively, even if plaintiff had pointed to facts creating a prima facie case of discrimination, Gill Studios has articulated a legitimate, nondiscriminatory reason for the adverse action. "After a plaintiff makes out a prima facie case, the defendant need not prove the absence of [discriminatory] motive, but must only produce evidence that would dispel the inference of [discrimination] by establishing the existence of a legitimate reason. If evidence of a legitimate reason is produced, the plaintiff may still prevail if [she] demonstrates the articulated reason was a mere pretext for discrimination." *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir.1997) (further quotations and citations omitted). In this case, Gill Studios produced evidence that even if plaintiff's position as a general production worker did not require that she fill bottles of 814 R Solvent, she would be exposed to some chemicals while performing that job. Gill Studios maintained that it placed plaintiff on medical disability because of the restrictions on exposure to chemicals. It further asserts that it terminated her employment only after she failed to return to work after she delivered her baby.

Of course, "[t]he factfinder's disbelief of the reasons put forward by the defendant ... may, together with the elements of the prima facie case, suffice to show intentional discrimination." *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). But "under ordinary summary judgment principles, the plaintiff must produce evidence from which a reasonable jury could believe that the defendant's proffered reason is a false one in order to survive summary judgment." *Conner*, 121 F.3d at 1396. In this case, plaintiff has failed to challenge Gill Studio's proffered nondiscriminatory reason for the disability leave and ultimately the termination. *Cf. O'Hara v. Saint Francis Hosp., Inc.*, 917 F.Supp. 1523, 1531 (N.D.Okla.1995) (plaintiff failed to controvert employer's evidence that she was fired due to incompetence; suspicious "timing alone is not enough to implicate discriminatory intent.")

Plaintiff in this case presented her employer with a medical restriction, which the employer logically determined prevented her from performing her job. Plaintiff proceeded to collect disability payments and insurance benefits while working for a new employer. Plaintiff now claims that her former employer discriminated against her when it followed her physicians' restrictions. In enacting the PDA, Congress certainly could not have envisioned that such circumstances would give rise to a cause of action. In any event, plaintiff has failed to meet her burden of producing evidence from which a rational trier of fact could find that Gill Studios discriminated against her because she was pregnant. The Court therefore sustains Gill Studio's motion for summary judgment on plaintiff's Title VII pregnancy discrimination claim.

### B. State Law Claim

Plaintiff's remaining claim is made pursuant to the KAAD, K.S.A. § 44–1001 *et seq.* The Court's subject matter jurisdiction over this state law claim is based on supplemental jurisdiction under 28 U.S.C. § 1367(a).

■ Gill Studios challenges the Court's subject matter jurisdiction over plaintiff's KAAD claim. It argues that plaintiff has failed to plead or prove that she exhausted the administrative remedies of the KAAD. *See* K.S.A. § 44–1010; *see also United Steelworkers of Am. Local No. 4706 v. Kansas Comm'n On Civil Rights*, 253 Kan. 327, 855 P.2d 905 (1993) (analyzing conflicting statutes and holding that under K.S.A. § 44–1010 "no cause of action accrues until a petition for reconsideration is at least filed with the administrative agency"). Plaintiff concedes that she has failed to prove that she has exhausted her administrative remedies. *See O'Loughlin v. The Pritchard Corp.*, 972 F.Supp. 1352, 1361 (D.Kan.1997) (noting that plaintiffs must exhaust administrative remedies before filing suit under the KAAD; failure to do so deprives court of subject matter jurisdiction). Thus, the evidence before the Court shows no genuine issue of material fact with respect to the failure of plaintiff to exhaust her administrative remedies under the KAAD. Accordingly, the Court grants

summary judgment on plaintiff's KAAD claim.

**IT IS THEREFORE ORDERED** that Gill Studio's motion for summary judgment (Doc. # 17) filed July 1, 1998, be and hereby is **SUSTAINED.**