Courtney **GREEN, Plaintiff,**

v.

**NEW BALANCE ATHLETIC SHOE, INC., Defendant.**

No. 01–CV–60–B–S.

United States District Court, D. Maine.

Jan. 29, 2002.

Sumner H. Lipman, Lipman & Katz, Tracie L. Adamson, Esq., Lipman & Katz P.A., Augusta, ME, for Courtney Green, Plaintiff.

Bernard J. Kubetz, Eaton, Peabody, Bradford & Veague, Bangor, ME, for New Balance Athletic Shoe Inc, Defendant.

**ORDER**

SINGAL, District Judge.

Plaintiff sued her former employer for discriminating against her because she was pregnant. Presently before the Court is Defendant's Motion for Summary Judgment (Docket # 5). For the following reasons, the Court GRANTS IN PART and DENIES IN PART the Motion.

## I. SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment on a claim if there is no genuine issue of material fact and the party prevails as a matter of law. Fed.R.Civ.P. 56(c). An issue is "genuine" if a rational jury making all reasonable inferences could resolve it in favor of either party. *See, e.g., Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir.1999). It is "material" if it has the potential to affect the outcome of the case under governing law. *See, e.g., Hinchey v. NYNEX Corp.*, 144 F.3d 134, 140 (1st Cir.1998).

Pursuant to Local Rule 56, the Court considers only facts contained in a party's Statement of Material Facts. *See* Local Rule 56. In adjudicating a motion for summary judgment, the Court interprets the facts in the light most favorable to the non-moving party. *See, e.g., Parks v. City of Brewer*, 56 F.Supp.2d 89, 92 (D.Me. 1999). Applying this standard, the Court recites the following facts.

## II. BACKGROUND

Defendant New Balance Athletic Shoe, Inc. ("New Balance") operates a shoe factory in Norridgewock, Maine. Plaintiff Courtney Green began working there in the spring of 1998 as a "floor person," lifting and transferring heavy boxes. In the early winter of 1999, Green informed her supervisor, Sue Cloutier, that she was pregnant. A short time later, Green presented Cloutier with a doctor's note restricting Green from lifting weights over twenty-five pounds. Cloutier subsequently urged Green to "bid" for a new work position within the company that she could perform while pregnant. Cloutier indicated to Green that haste was essential, because the company would not "accommodate" her pregnancy "down the road."

(*See* Pl. Statement of Material Facts ("PSMF"), ¶ 7 (Docket # 16)).

One week later, Green placed a bid to be transferred from her "floor person" position to a different one. On her bid form, Green explained that her work was "too strenuous" due to her pregnancy. (*See* Kubetz Aff. at Ex. A (Docket # 9)). In reality, according to Green, this was untrue. She never lifted weights in excess of twenty-five pounds as a floor person, and only requested the transfer because Cloutier pressured her to do so. On February 22, 1999, New Balance transferred Green to a new position working on a shoe assembly line in the company's "Upper Prep" operation. Her hourly wage in Upper Prep was $7.54 per hour, calculated as a base rate of $6.15 (later $6.25) per hour plus incentive payments based upon the volume of production in Upper Prep.

On April 1, 1999, Green began experiencing back pain associated with her pregnancy and applied for a medical leave of absence. She supported her application with a certificate from her doctor indicating that she needed to be out of work until further notice for "medical reasons." (*See* Kubetz Aff. at Ex. C (Docket # 9)). New Balance granted the leave on April 5, 1999. In doing so, it provided Green with information about its Family Medical Leave Act ("FMLA") policy, under which employees could take up to thirteen weeks of "FMLA leave" for "serious" health reasons. (*See* Kubetz Aff. at Ex. B (Docket # 9)). Green began her leave that day.

Green contacted New Balance several times during her absence to inform the company that she anticipated returning to work. Green's doctor cleared her to return to work on June 14, 1999, provided, however, that she did not engage in heavy lifting and was allowed to work from a sitting position for part of the day. Green contacted Jean Fales in New Balance's Human Resources department that day to ask for her job back, but only succeeded in leaving a message. Fales returned her call a day later, only to inform her that her old position had been filled and no others were available. Green further alleges, although New Balance disagrees, that Fales told her specifically that New Balance would not "accommodate" her and that she was terminated. (*See* PSMF, ¶ 20 (Docket # 16)). Green protested to New Balance that refusing to reinstate her was illegal. Three days later, Fales called Green again, this time telling her that she could, in fact, return to work, but only for four hours per day, and only in a different position that entailed a reduction in pay. Fales explained that Green's doctor, Bryn Burnham, had imposed the part-time work restriction herself, and that Green could "take [the job] or leave it." (*See* PSMF, ¶ 20 (Docket # 16)). Green disputes that Dr. Burnham ordered the reduction in hours, or that it was even necessary.

Nevertheless, on June 21, 1999, she returned to work in a new assembly line position with the company's "Prefit" operation, on the reduced schedule. The job required Green to remain standing for extended periods of time, aggravating her back pain. Green asked for several different accommodations for her pain, none of which the company granted. Initially, she asked Cloutier to adjust the height of the machine at her workstation. Plaintiff claims that Cloutier responded that although it could be done, it was not worthwhile for the company to adjust the machine height because Green was due to leave the position in short order when she went on maternity leave. Green then requested a stool to sit on, but the company refused, explaining that the job could not be performed from a sitting position. She also asked to be allowed to walk away from her workstation to alleviate her back pain, but the company again refused. Finally, Green asked for a personal fan at

her workstation, because the Prefit operation was in a part of the facility that was particularly warm. Defendant also refused that request.

The new position took its toll on Green financially. Because of her back pain, she was unable to increase her hours beyond four per day, although she acknowledges that the company invited her to do so. Green also initially earned significantly less per hour at her new position than her old one, because the company refused to pay her incentive wages while she trained at her new workstation.

On June 30, 1999, Green applied to the company for so-called "reduced leave" under the FMLA to account for the four hours per day that she could not work. In the same application, she also applied for six to eight weeks of maternity leave, beginning on August 6, 1999. According to Green, Cloutier ordered her to submit the application, and she only complied because she feared losing her job. Two days later, the facility entered its annual two-week, July 4 shutdown, which lasted from July 2, 1999, through roughly July 18, 1999. Plaintiff did not work during that time.

By letter dated July 23, 1999, New Balance permitted Green to continue working on her reduced leave schedule until August 6. It noted, however, that Green's thirteen weeks of FMLA leave expired on July 26, and for that reason it would not grant her request for maternity leave. As of August 6, the letter stated, Green's employment with New Balance would be terminated. On July 26, 1999, Green's medical condition changed, and instead of working two more weeks at four hours per day, she left work at New Balance for good.

After receiving a right to sue letter from the Maine Human Rights Commission, Plaintiff filed suit in this Court alleging violations of the federal Pregnancy Discrimination Act (the "PDA") contained within the provisions of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, and the Maine Pregnancy Act (the "MPA"), 5 M.R.S.A. § 4572–A (Count I); the federal Family and Medical Leave Act (the "FMLA"), 26 U.S.C. § 2601 et seq. (Counts II and III); and the Maine Whistleblower's Protection Act (the "MWPA"), 26 M.R.S.A. § 831 et seq. (Count IV). After discovery, Defendant filed the instant Motion for Summary Judgment.

## III. OVERVIEW OF THE PDA AND FMLA

The better portion of Plaintiff's Complaint focuses upon the violation of the PDA and FMLA. The Court gives an overview of each below, to set the stage for the discussion of the merits of Defendant's Motion.

### A. Pregnancy Discrimination Act

Generally, Title VII of the Civil Rights Act of 1964 prohibits an employer from "[failing] or [refusing] to hire or [discharging] any individual, or otherwise [discriminating] against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2. In 1991, Congress amended Title VII to include the PDA, outlawing discrimination on the basis of pregnancy. *Id.* The PDA clarified that the phrase "because of sex" includes actions taken "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k).

A plaintiff seeking shelter under the PDA's umbrella may assert two types of claims: disparate treatment or disparate impact. *See Smith v. F.W. Morse & Co.*, 76 F.3d 413, 420 (1st Cir.1996). The instant case deals only with the first variety, in which an employer affirmatively treats a pregnant employee differently than it treats its non-pregnant employees.

*Id.* A plaintiff suing her employer for disparate treatment bears the burden of showing that her employer purposely took adverse action against her because of her pregnancy. *Id.* If she can do so by producing direct evidence of her employer's discriminatory intent—say, a statement by the employer that admits to taking her pregnancy into account in making an employment decision—her burden is satisfied, and to avoid liability the employer must demonstrate that it would have taken the adverse employment action even in the absence of the plaintiff's pregnancy. *Id.* at 421.

■ In the majority of cases, however, a plaintiff relies on circumstantial evidence of discrimination in pressing her case. *Id.* at 420. She must approach this task via the well-trodden path plotted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The now-familiar "burden shifting" analysis of *McDonnell Douglas* first requires a plaintiff to establish a prima facie case of pregnancy discrimination: (1) that she was pregnant; (2) that she was capable of adequately performing her job; (3) that her employer took an adverse action against her; and (4) that her employer treated her differently than it treated other, non-pregnant employees who had a similar ability or inability to work. *See, e.g., Udo v. Tomes*, 54 F.3d 9, 12 (1st Cir.1995); *Leeker v. Gill Studios, Inc.*, 21 F.Supp.2d 1267, 1272 (D.Kan.1998). Once the plaintiff reaches this threshold, the evidentiary burden shifts to the employer to identify a nondiscriminatory reason for taking the adverse action against her. *See id.* (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817.) On this showing, the burden shifts back to the plaintiff to demonstrate that the employer's given reasons are pretext, and that the determining motivation for the adverse action was retaliatory. *Id.*

■ The Court specifically discusses Plaintiff's claims pursuant to the PDA, but its conclusions are equally applicable to the Maine Pregnancy Act ("MPA"), 5 M.R.S.A. § 4572-A. *See, e.g., Braverman v. Penobscot Shoe Co.*, 859 F.Supp. 596, 606 (D.Me. 1994) (interpreting the Maine Human Rights Act in a manner consistent with analogous federal discrimination law). All of Plaintiff's PDA claims that survive Defendant's Motion for summary judgment also survive under the MPA. *See, e.g., Wargo v. Wal–Mart Stores, Inc.*, No. 00–47–P–H, 2000 WL 1183093 at *4 (D.Me. Aug. 17, 2000).

**B. Family and Medical Leave Act ("FMLA")**

■ The FMLA guarantees twelve weeks per year of unpaid "FMLA-qualifying" leave to all employees of employers who employ fifty or more persons during twenty or more calendar weeks during a year. 29 U.S.C. § 2612. An employer may, at its option, provide more leave than the minimum twelve weeks mandated by the FMLA, and indeed section 2653 encourages employers to do so. *Id.* at § 2653. However, this encouragement does not create a cause of action under the FMLA if an employer with a leave policy more generous than the one the FMLA mandates fails to provide an employee with more than twelve weeks of leave. *See, e.g., Rich v. Delta Air Lines, Inc.*, 921 F.Supp. 767, 773 (N.D.Ga.1996).

"Any period of incapacity due to pregnancy, or for prenatal care" taken by an employee is considered "FMLA-qualifying". *Id.* at § 825.114(a)(2)(ii). An employer must restore an employee who returns from qualifying leave to the same or equivalent position that she previously occupied. *Id.* at § 2614. An "equivalent" position is one that involves the same or substantially similar compensation, duties,

responsibilities and working schedule, and the same or a geographically proximate work site. 29 C.F.R. § 825.215. To be clear, however, it need not be the same position the employee held before she took leave. *Id.*

When an employee who returns from FMLA-qualifying leave is not capable of returning from leave to full-time work because of a serious medical condition, the employee may return on a "reduced leave" basis. *See* 29 C.F.R. § 825.204. An employee who elects to take reduced leave may work partial days, or part-time, and the employer may count the remainder of her workday or workweek as FMLA-qualifying leave. *Id.;* 29 C.F.R. § 825.208(a). An employer who counts this time off as FMLA-qualifying must notify the employee of this fact within two days of its decision to do so. 29 C.F.R. § 208(b)(1). An employee who requests reduced leave retains the right to receive equivalent pay and benefits, but loses the right to return to a position with equivalent duties until she can return to that position full time. *Id.* at § 825.204(c). At the employer's discretion, the employee may be placed in an "alternative position," meaning a position with equivalent pay but different duties, responsibilities and conditions. *Id.* However, an employer may not require an employee to take more leave than necessary to address her inability to work. *Id.* at § 825.204(e).

■ An employee may sue her employer under the FMLA for violation of its terms, 29 U.S.C. § 2615(a)(1), or for retaliation against her for taking FMLA leave. *See Hodgens v. Gen. Dynamics Corp.,* 144 F.3d 151, 160 n. 4 (1st Cir.1998). Unlike Title VII, a violation of the substantive terms of the FMLA need not be motivated by a desire to discriminate to be actionable. *Id.* at 159. On the other hand, an employee who seeks to recover for retaliatory discharge faces the same evidentiary burden-shifting as a plaintiff in a Title VII case. *Id.* at 160.

## IV. DISCUSSION

Over a period of roughly six months, Plaintiff alleges she suffered a string of indignities at the hands of Defendant that prompted her to file her Complaint. Some of these occurrences are arguably actionable. Others, simply as a matter of law or because of Plaintiff's failure to support her arguments with specific facts, are not. The Court discusses them below in chronological order, in an effort not only to resolve Defendant's Motion, but also to clarify the legal issues remaining.

### A. Plaintiff Transfers from Floor Person to Upper Prep

■ The first indignity, according to Plaintiff, occurred when her supervisor pressured her to transfer from her floor person position to a new one, ostensibly to facilitate her work during pregnancy. In particular, Plaintiff contends that the supervisor warned her that Defendant would not accommodate her pregnancy "down the road," the implication being that if Plaintiff did not transfer, she would lose her job. Although Plaintiff makes much of this slight in her statement of material facts, she fails to press any argument about its legal significance in her brief. Any claim arising from this occurrence is therefore deemed waived. *See, e.g. Grenier v. Cyanamid Plastics, Inc.,* 70 F.3d 667, 678 (1st Cir.1995).

### B. Plaintiff Takes Leave for Back Pain

■ The second occurrence presents the opposite problem. Plaintiff insists that she was forced to take leave for her back pain in violation of the FMLA in her brief, but fails to support that allegation with any evidence in her Statement of Material

Facts. This claim, like the previous one, must therefore fail.

## C. Plaintiff Asks to be Reinstated

In the days immediately following June 14, 1999, when Plaintiff contacted Defendant asking be reinstated to her position, several events transpired that Plaintiff claims were of legal effect. The Court agrees that some were, but finds that others were not.

### 1. Defendant Informs Plaintiff that her Position has been Filled

Plaintiff first argues that Defendant had no right to fill her old position under the FMLA. This is plainly not the case. The FMLA allows an employer to replace an employee who has taken a FMLA-qualifying leave, provided that the employer reinstates the employee to an equivalent position once she returns. 29 U.S.C. § 2614(a)(1)(B).

### 2. Defendant Temporarily "Fires" Plaintiff

■ According to Plaintiff, Defendant also informed her when she sought reinstatement that her employment had been terminated. Plaintiff contends that her firing, albeit temporary, violated the PDA, and she successfully demonstrates facts creating a genuine issue of material fact as to her prima facie case. She was (1) pregnant, and (2) a reasonable jury could conclude from the evidence that she was capable of performing the reduced leave job to which she was entitled under the FMLA. She has alleged (3) that Defendant took adverse action against her, and (4) that Defendant maintained a policy of allowing its employees thirteen weeks of FMLA-qualifying leave, which it did not grant her when it fired her.

■ The burden shifts to Defendant to demonstrate a nondiscriminatory reason for the firing. Defendant satisfies it by denying that it ever fired Plaintiff to begin with, and arguing that its delay in reinstating her merely reflected its concern for finding her the right job. The burden thus shifts back to Plaintiff, who adduces evidence creating a genuine issue of material fact as to Defendant's discriminatory motivation. Plaintiff's supervisor had warned her that the company would not "accommodate" her pregnancy "down the road." A reasonable jury could conclude from this evidence that Plaintiff's supervisor was indicating to Plaintiff that Defendant harbored discriminatory animus towards pregnant women. Thus, Plaintiff's claim that her "temporary termination" violated the PDA survives summary judgment.[1]

### 3. Defendant Offers Plaintiff a Non-Equivalent Job with Fewer Hours

The bulk of Plaintiff's arguments focus upon the next event in the factual chain. When Plaintiff asked to be reinstated upon returning from ten weeks of FMLA leave for her back pain, Defendant offered her a different job, with fewer hours, on a "take it or leave it" basis. Plaintiff argues that this act violated both the FMLA and the PDA.

### a. FMLA

Plaintiff first claims that the reduction in hours violated the FMLA's provision guaranteeing that an employee be given an "equivalent position" upon returning from FMLA-qualifying leave. Yet, Plaintiff admits that she was not *capable* of working more than a four-hour day in the position she was given. She did, however, have the

---

1. The Court notes, however, that Plaintiff may have difficulty demonstrating damages on this point, to the extent that she was reinstated to a position at the company within a week of her alleged temporary termination.

right to return to work on a reduced leave schedule in a job with equivalent compensation. 29 C.F.R. § 825.204. Thus, the harm in Plaintiff's reduction in work hours lies only in the fact that Defendant "forced" it upon her, and in Plaintiff's claim that she could have worked a full day with accommodation.

As to the first argument, the Court fails to see how being "forced" onto reduced leave harmed Plaintiff in the least. After all, if she had attempted to return to work full time in an equivalent position, it is evident from her doctor's note and her subsequent difficulty working that she could not have remained at her position for more than four hours per day. That her employer mandated that she take reduced leave, rather than waiting for her to request it, is not an actionable harm under the FMLA. *See, e.g., Love v. City of Dallas,* No. 3:96–CV–0532–R, 1997 WL 278126 at *6 (N.D.Tex. May 14, 1997). Plaintiff counters that she could have worked full time had Defendant accommodated her physical condition, and therefore that she suffered actionable harm under the FMLA because Defendant did not. This argument, likewise, cannot succeed, because the FMLA contains no accommodation provision. *See, e.g. Tardie v. Rehabilitation Hosp. of Rhode Island,* 168 F.3d 538, 544 (1st Cir.1999); *Jewell v. Reid's Confectionary Co.,* 172 F.Supp.2d 212, 220 (D.Me. 2001).

Plaintiff's only right under the FMLA while in her reduced leave employment was to pay and benefits equivalent to that of her former position. *See* 29 C.F.R. § 825.204(c). It is to this equivalency that the Court therefore turns. Plaintiff alleg-

es, and Defendant appears to agree, that Plaintiff's *per hour* wage initially dropped when she began working in Prefit because she was paid only her base pay without production incentives while she trained.[2] It is also undisputed that although the duties of Plaintiff's new position were different from the old, the pay scale and the method by which pay was calculated (as base pay plus incentives) was the same. The Court concludes that Defendant is not entitled to summary judgment on this point, as a genuine issue of material fact remains as to whether Plaintiff received equivalent pay.[3]

b. PDA

Wholly separate from her FMLA claims, Plaintiff also argues that her reassignment to Prefit, with its concomitant decreases in hours and pay, and Defendant's refusal to accommodate her physical difficulties while working there, violated the PDA. To survive summary judgment on these arguments, Plaintiff must first demonstrate a prima facie case for pregnancy discrimination as to each of the adverse acts. *See Udo,* 54 F.3d at 12. Plaintiff's nemesis in this regard is the PDA's requirement that she demonstrate that she was treated differently than other, non-pregnant employees with a similar ability or inability to work. *Id.*

For instance, Plaintiff argues that Defendant is liable under the PDA for reducing the number of hours she worked per day. However, Plaintiff does not state any material facts that could lead a reasonable jury to believe that Defendant did not treat other employees returning from

---

2. Because Plaintiff could not work more than four hours per day without accommodation, Plaintiff cannot claim that the decrease in wage that resulted from working half-time gives rise to a cause of action under the FMLA.

3. In a separate order issued concurrently with this Order, the Court requests briefing on the issue of the meaning of the phrase "equivalent pay" pursuant to the FMLA.

FMLA-qualifying leave similarly. For the same reason, Plaintiff's argument that Defendant violated the PDA by refusing to provide her with various accommodations at her new job, such as a stool to sit on, a personal fan, or the ability to walk away from her workstation to stretch her back, must also fail. There are simply no facts in Plaintiff's Statement of Material Facts to support the inference that Defendant granted these accommodations to other, non-pregnant employees, while not providing them to Plaintiff.

 By contrast, Plaintiff *does* state a prima facie case of pregnancy discrimination as to Defendant's reduction of her hourly wage while she trained in her new position, and its refusal to adjust the height of her workstation. As to the hourly wage, Plaintiff has successfully stated facts sufficient for a reasonable jury to find that she was pregnant and that she was capable of performing her Prefit job. She has also adduced facts showing that in returning her to a new position, Defendant reduced her hourly wages temporarily. Finally, she has stated facts showing that Defendant did not consistently reduce the training wages of employees—rather it did so in some circumstances and not in others. Therefore, Plaintiff has demonstrated a genuine issue of material fact as to her prima facie case for pregnancy discrimination arising from the reduction of her hourly wage.

 Following the *McDonnell Douglas* analysis, the Court next looks to Defendant to provide a nondiscriminatory reason for paying Plaintiff a reduced wage. It has done so, explaining that the decision to pay lower wages to trainees is made based upon their experience with the particular machines or processes on which they are being trained to work. Upon this showing, the burden shifts back to Plaintiff, who must demonstrate a genuine issue of material fact that Defendant's proffered reason

merely masks its discriminatory intent. The Court is again satisfied that she has done so. Plaintiff has adduced evidence showing that her supervisor warned her that Defendant would not respond favorably to her pregnancy, and that the same supervisor refused to adjust her machine height because she would soon be leaving work because of her pregnancy. A reasonable jury could conclude, from these facts, that Defendant acted with discriminatory animus towards her as a pregnant woman in failing to pay her the same wage she had been receiving in her Upper Prep position.

 The Court need not engage in burden-shifting with regard to Defendant's refusal to adjust the height of Plaintiff's workstation. As to this claim, Plaintiff has adduced direct evidence of discriminatory animus: a statement by her supervisor that the specific reason she refused to adjust the machine height was because Plaintiff was pregnant and would be leaving work soon on maternity leave. To succeed on summary judgment, Defendant would have to produce evidence showing that it would have refused to adjust the machine height absent Plaintiff's pregnancy. Defendant has not done so, and therefore Plaintiff has successfully demonstrated a genuine issue of material fact on this issue as well.

Genuine issues of material fact therefore remain as to Defendant's liability under the PDA for (1) Defendant's decision initially to pay Plaintiff lower "training" wages when it transferred her to Prefit; and (2) Defendant's refusal to adjust Plaintiff's machine height at her Prefit workstation.

## D. Defendant Fires Plaintiff When She Exhausts her FMLA Leave Allowance

Defendant's termination of Plaintiff in its July 23, 1999, letter is the final slight to

which Plaintiff points. Defendant justified firing Plaintiff because she had exhausted her FMLA leave allowance. Plaintiff argues that Defendant had no right to accrue her leave against her while she worked half days, and that in any case when she was fired she still had unspent leave time regardless of how it had been accrued.

### 1. FMLA

Plaintiff argues that Defendant had no right to count her reduced leave days against her FMLA allowance. This argument is without merit. Defendant had full authority to do so provided it gave Plaintiff notice. *See* 29 C.F.R. § 825.208; *Hicks v. Leroy's Jewelers, Inc.*, No. Civ. A. 3:97–512–S, 1998 WL 1770346 at *2 (W.D.Ky. Oct. 22, 1998) *aff'd* 225 F.3d 659 (6th Cir.2000). Moreover, even if Defendant failed to give Plaintiff notice, the failure to do so would only create liability if it "interfered with, restrained or denied her the ability to exercise her right" to leave under the FMLA. *Holmes v. e.spire Communs., Inc.*, 135 F.Supp.2d 657, 665 n. 9 (D.Md.2001).

In addressing this issue, it is important to keep in mind that the FMLA only required Defendant to provide Plaintiff with twelve, not thirteen, weeks of leave. *See Holmes*, 135 F.Supp.2d at 666–67 (citing *Rich*, 921 F.Supp. at 773). It is undisputed that Plaintiff spent ten weeks of FMLA-qualifying leave between April 5, 1999, and June 14, 1999. Therefore, interpreting the facts in the light most favorable to Plaintiff, at the time she returned to work on June 21, 1999, she had only two weeks of FMLA-qualifying leave remaining in her allowance.[4] Plaintiff worked four-hour days for three workweeks dur-

ing the following five weeks. The Court will assume for argument's sake that Plaintiff did not accrue leave during those three weeks. Therefore, as of July 26, 1999, when Plaintiff left work voluntarily for medical reasons associated with her pregnancy, the Court assumes she still had two weeks of FMLA-mandated leave remaining.

Defendant terminated Plaintiff as of August 6, 1999, the last day of the two workweeks beginning July 26, 1999. During those two weeks, Plaintiff was absent from work for reasons that were unquestionably FMLA-qualifying. There is no genuine issue of material fact whether Plaintiff had notice that Defendant would treat the time off during these weeks as FMLA-qualifying if it thought she had leave remaining in her allowance. Thus, giving Plaintiff the benefit of the doubt, on August 6, 1999, at the very latest, she exhausted the twelve weeks of leave guaranteed to her pursuant to the FMLA. Thus, it is irrelevant whether or not Defendant counted Plaintiff's three weeks of half days against her FMLA allowance, because even if it had not, Plaintiff would nevertheless have used, and exhausted, her leave. By the same token there is no remedy under the FMLA for Plaintiff's termination, since Defendant had the right to terminate her once she did not return to work after her leave had expired. *See Holmes*, 135 F.Supp.2d at 666–67.[5]

### 2. PDA

Plaintiff also attacks the calculation of leave and her termination under the PDA. As to the first claim, Plaintiff does not adequately address whether Defen-

---

**4.** Defendant does not appear to argue that it counted the week of June 14, 1999, through June 21, 1999, against Plaintiff's leave.

**5.** While Plaintiff may have had a claim for breach of her employment contract allowing her thirteen weeks instead of twelve, she has not made that argument here, and it is deemed waived.

dant's decision to designate the leave as FMLA leave violated the PDA, because she has failed to adduce specific facts showing that Defendant treated her differently from non-pregnant employees. There is no evidence in Plaintiff's Statement of Material Facts that Defendant was in the habit of designating pregnant women's leave as FMLA leave, while it did not make the same designation for non-pregnant employees who missed work for health-related reasons.

■ Plaintiff also argues that her termination violated the PDA, and this claim is similarly without merit. At issue is not the twelve weeks of leave mandated under the FMLA, but the thirteen weeks Plaintiff was due under Defendant's leave policy. As described above, giving every benefit of the doubt to Plaintiff, she exhausted her FMLA-mandated leave as of August 6, 1999. Therefore, by the most generous inferences, Plaintiff has shown that she was due at most one more week of leave past August 6.

When Plaintiff left work on July 26, she did so voluntarily for pregnancy-related medical reasons that rendered her incapable of working. Plaintiff has failed to adduce any facts showing that she returned, or could have returned, to Defendant and demanded reinstatement before August 13, the date her leave under Defendant's leave policy expired. Because Plaintiff presents no evidence upon which a reasonable jury could conclude that she was capable of performing her job at that time, she cannot establish a prima facie case for discrimination. That Defendant told her that she would be terminated as of August 6 is irrelevant. Plaintiff left work voluntarily on July 26, and it appears she never went back.

### E. Plaintiff's Retaliation Claims

The Court addresses Plaintiff's retaliatory discharge claims separately. One of them arises under the FMLA, which prohibits employers from taking adverse employment action against employees in retaliation for the employees exercising their leave rights under the Act. The other arises under the Maine Whistleblower's Protection Act ("MWPA"), 26 M.R.S.A. § 833. The MWPA prohibits an employer, in relevant part, from taking adverse employment action against an employee who "reports orally or in writing to the employer or a public body what the employee has reasonable cause to believe is a violation of a law or rule adopted under the laws of this State and ... of the United States." 26 M.R.S.A. § 833(1)(A).

■ The evidentiary burdens for establishing retaliation under each statute are fairly similar. For both, the Court applies the *McDonnell Douglas* scheme, requiring Plaintiff first to state a prima facie case for retaliation. Under the FMLA, the prima facie case consists of: (1) Plaintiff's exercise of a protected right under the FMLA; (2) a subsequent adverse employment action taken by Defendant against Plaintiff; and (3) a causal nexus between the exercise of the right and the adverse action. *See, e.g., Hodgens*, 144 F.3d at 161. Similarly, under the MWPA, the prima facie case consists of: (1) Plaintiff's exercise of a protected right; (2) a subsequent adverse action by Defendant; and (3) a causal nexus between the two. *See Higgins v. New Balance Ath. Shoe, Inc.*, 194 F.3d 252, 261 (1st Cir.1999). Upon these showings, the burden shifts to Defendant to state a nonretaliatory reason for taking adverse action against Plaintiff, and then shifts again to Plaintiff to demonstrate that the real reason for the action was retaliatory.

■ Plaintiff argues that Defendant retaliated against her for taking FMLA leave (her FMLA retaliation claim), and for informing Defendant, when it "tempo-

rarily" terminated her, that its actions were illegal (her MWPA retaliation claim). Even assuming Plaintiff is able to make out the elements of a prima facie case under either statute, however, the Court finds that she cannot defeat Defendant's Motion in this regard. There is simply not enough evidence in Plaintiff's Statement of Material Facts for a reasonable jury to infer that Defendant intended to retaliate against Plaintiff either for taking her leave or reporting an illegality. Plaintiff acknowledges that Defendant encouraged her to take her FMLA leave, belying any suggestion that it would *punish* her for doing so. Similarly, shortly after Plaintiff informed Defendant that firing her would be illegal, Defendant in fact *reinstated* her. That it later terminated her is without doubt. That this action was in any way related to her decision, alone, to take leave or protest her initial firing, simply defies logic. While Plaintiff has satisfied the Court that there are genuine issues of material fact as to Defendant's discriminatory animus on the basis of her pregnancy, there is a dearth of evidence to support genuine issues as to the retaliation claims.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion as to Counts III and IV. The Court DENIES Defendant's Motion as to Counts I and II, insofar as genuine issues of material fact remain as to whether (1) Defendant violated the PDA and MPA in temporarily terminating Plaintiff; (2) Defendant violated the FMLA by paying Plaintiff a less-than-equivalent wage when she began her work in Profit; (3) Defendant violated the PDA and MPA in reducing Plaintiff's hourly wage; and (4) Defendant violated the PDA and MPA in refusing to adjust Plaintiff's machine height. The Court GRANTS the Motion as to any remaining claims pursuant to the PDA and FMLA in Counts I and II.

SO ORDERED.